**In the Matter of the GUARDIANSHIP OF Josephine A. HICKMAN.**

**Leo E. Hickman, Jr., Appellant–Respondent,**

**v.**

**Irwin Union Bank, as guardian of the estate of Josephine A. Hickman, Appellee–Movant,**

**and**

**Joseph Hickman as guardian of the person of Josephine A. Hickman, Appellee–Movant.**

No. 53A01–0306–CV–220.

Court of Appeals of Indiana.

July 13, 2004.

Rehearing Denied Sept. 1, 2004.

Curtis E. Shirley, Indianapolis, IN, Eric Allan Koch, The Koch Law Firm, Bloomington, IN, Attorneys for Appellant.

Jarrell B. Hammond, Anthony M. Eletheri, Stefanie R. Crawford, Lewis & Wagner, Indianapolis, IN, Attorneys for Appellee, Irwin Union Bank.

Peter J. Rusthoven, Bart A. Karwath, Barnes & Thornburg, Indianapolis, IN, Attorneys for Appellee, Joseph Hickman.

## OPINION

BARNES, Judge.

### Case Summary

Leo Hickman, Jr., appeals the trial court's granting of a motion to rescind a stock transfer from his mother, Josephine Hickman, to him.[1] Leo also appeals the trial court's award of attorney fees from Josephine's estate to his brother, Joseph Hickman. We affirm in part and reverse in part.

### Issues

Leo raises several issues, which we consolidate and restate as:

I. whether the trial court properly issued an order rescinding the transfer of stock from Josephine to Leo after the trial court clerk filed a notice of completion of the clerk's record in another appeal related to this case; and

II. whether the trial court properly granted Joseph's request for attorney fees.

### Facts

This is the third of what now appears to be four appeals stemming from a family dispute over the guardianship of Josephine.[2] The Hickman family owns Hoosier Outdoor Advertising Corporation ("Hoosier Outdoor"). Leo's father was the president of Hoosier Outdoor from the 1950's until his death in 1977. After his father's death, Leo's mother, Josephine, became the president. Over the years, Leo and his six siblings have been involved in Hoosier Outdoor in various capacities. Leo

---

1. The transfer at issue also involved the transfer of stock to Leo's siblings; however, those transfers are not the subject of today's appeal.

2. In a memorandum decision, we determined that a guardianship proceeding was the proper forum for addressing a preliminary injunction concerning Leo's threatened termination of his siblings' health insurance and that the trial court did not abuse its discretion in issuing the preliminary injunction. *See In re Hickman*, 792 N.E.2d 106 (Ind.Ct.App.2003), *trans. denied.* In another opinion, we addressed whether the trial court abused its discretion when it denied Leo's motion for change of judge; whether the trial court properly denied Leo's request for a jury trial in the guardianship proceeding; and whether the trial court abused its discretion in admitting into evidence certain testimony of the guardian ad litem. We affirmed the trial court's rulings. *See Hickman v. Hickman*, 805 N.E.2d 808 (Ind.Ct.App.2004). In addition to our opinion today, a notice of appeal was filed on October 5, 2003, in cause number 53A05–0402–CV–97. At issue in that appeal is a request for additional attorney fees.

was the vice-president from 1975 until 2001. Prior to July 2001, the remaining siblings were shareholders and officers or directors of Hoosier Outdoor. Joseph and Jamie Hickman were also employees of Hoosier Outdoor.

On February 14, 1988, Josephine fell and hit her head. Josephine was severely injured and never fully recovered from the fall. She now resides in a nursing home. Despite her condition, Josephine retained her position as president of Hoosier Outdoor.

Prior to her accident, Josephine gave gifts of stock to her children. Leo received gifts of voting stock, and his siblings received gifts of non-voting stock. This gift-giving continued after her accident but ended in 1997, before Leo could receive a controlling share of Hoosier Outdoor. By all accounts, Leo will receive a controlling share of Hoosier Outdoor upon Josephine's death. However, if Leo predeceases Josephine, his wife and children will not receive anything under Josephine's will.

On July 19, 2001, Leo and his wife visited Josephine in the nursing home. Leo presented Josephine with a document prepared by his attorney, which Josephine signed. The document evidenced a gift of 120 shares of voting stock to Leo and 124 shares of non-voting stock to each of his siblings. This gift of stock was sufficient to give Leo control over the corporation. Josephine consulted neither her attorney nor any other family members before signing the document.

That same day, Leo removed his siblings from their positions as officers and directors and replaced them with his wife and daughter. Leo also named himself as president of Hoosier Outdoor. Leo eventually terminated Joseph's and Jamie's employment with the corporation and attempted to terminate the health insurance provided by Hoosier Outdoor to his siblings and Josephine.

Since then, almost continuous litigation has ensued. On August 1, 2001, Joseph petitioned for temporary guardianship over Josephine and later petitioned for a permanent guardian to be appointed over Josephine's person and estate. All of the siblings consented to the guardianship petitions except Leo. While Joseph remained as the petitioner for the guardianship, the trial court appointed a guardian ad litem to represent Josephine, and Leo participated in the proceedings as an interested person.

On June 25, 2002, the trial court granted Joseph's petition for a temporary restraining order preventing Leo from terminating the health insurance coverage of their siblings, Josephine, and him. On July 24, 2002, the trial court granted Joseph's motion for a preliminary injunction, from which Leo appealed. We affirmed the trial court's decision in *In re Hickman*, 792 N.E.2d 106 (Ind.Ct.App.2003).

On September 3, 2002, the trial court impaneled an advisory jury, and a four-day trial on the guardianship began. Following the trial, the trial court determined that Josephine was incapacitated and was in need of a guardian. In its findings and conclusions, the trial court recognized, "At the outset of the trial, the Court limited the matters to be heard on whether Josephine is incapacitated and whether a guardian is necessary for her estate and her person." Appellant's App. Vol. I. p. 70. The trial court concluded that a person is incapacitated when he or she is unable to manage her property in whole or in part or to provide self care because of insanity, mental illness, mental deficiency, physical illness, infirmity, habitual drunkenness, excessive use of drugs, incarceration, confinement, detention, duress, fraud,

*undue influence of others on the individual,* or other incapacity. *See* Appellant's App. Vol. I. p. 72 (citing Ind.Code § 29–3–1–7.5). The trial court concluded, "Undue influence occurs when a person imposes his power and will on another so that the victim of undue influence performs an act that is not the victim's voluntary act but rather the act of the perpetrator." *Id.*

In determining whether Josephine's incapacity arose as a result of Leo's undue influence on July 19, 2001, as alleged by Joseph, the trial court concluded, "Josephine had been the victim of undue influence therefore needed a guardian of the estate." The trial court went on to conclude in part:

8. Leo Jr.'s actions of July 19, 2001, amount to an undue influence transaction. Josephine's actions were not the voluntary actions of Josephine Hickman, but rather the actions of Leo Jr. Without any of her other children or advisors present, Leo Jr. obtained Josephine's signature on documents that purport to transfer what is likely her most valuable asset (control of Hoosier Outdoor Advertising Corporation) without consideration and then remove[d] her children from positions to which Josephine had appointed them prior to her injury. All of this was done based on docu-

ments prepared in advance by Leo Jr.'s attorneys. Josephine was denied advice from any counsel and any informal advisors.

* * * * *

10. The Court concurs in the jury's evident conclusion that the actions of July 19, 2001, amount to undue influence. Josephine is and was on July 19, 2001, incapacitated under the law and in no way capable of making a knowing or voluntary transfer of stock to Leo Jr.

Appellant's App. Vol. I. p. 74. The trial court appointed Joseph as the guardian of Josephine's person and Irwin Union Bank ("Irwin Union") as the guardian of Josephine's estate.

On October 7, 2002, Leo filed a notice of appeal. On November 20, 2002, Joseph filed a motion to instruct the guardian of the estate to pay his attorney fees.[3] On February 18, 2003, a notice of completion of the clerk's record was filed.[4] On March 12, 2003, Irwin Union filed a motion to rescind the July 19, 2001 stock transfer based on the findings of undue influence in the guardianship proceeding. On June 2, 2003, the trial court granted Irwin Union's motion to rescind the transfer of stock.[5] On June 9, 2003, the trial

---

3. Leo also petitioned the trial court to award him attorney fees; however, the trial court denied his petition. On appeal, he does not argue that the trial court erred in denying his petition.

4. We note that two prior notices of completion of the clerk's record were also filed, but for purposes of this appeal, we will only consider the date of the filing of the latest notice.

5. While the appeal in *Hickman v. Hickman,* 805 N.E.2d 808 (Ind.Ct.App.2004) was pending, Leo petitioned this court to stay the enforcement of the final order rescinding the transfer of stock. After oral argument was

held, we denied Leo's petition. Irwin Union argues that our order denying the petition "arguably renders the issues in this appeal moot." Appellee Irwin Union's Br. p. 10. Irwin Union's failure to develop this argument or support it with citations to authority waives the issue. *See Loomis v. Ameritech Corp.,* 764 N.E.2d 658, 668 (Ind.Ct.App.2002), *trans. denied; see also* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on...."). Regardless, "[e]ven though the

court granted Joseph's motion for attorney fees. Leo now appeals.

## Analysis[6]

### I. Order Rescinding Stock Transfer

Leo argues the trial court erred in granting Irwin Union's motion to rescind the July 19, 2001 stock transfer from Josephine to Leo. He asserts in part that the trial court was without jurisdiction to issue such an order because an appeal concerning the guardianship proceeding was pending.[7]

Generally, we acquire jurisdiction over a matter on the date the trial court clerk issues its notice of completion of the clerk's record. Ind. Appellate Rule 8. "Once an appeal has been perfected to the Court of Appeals or the Supreme Court, the trial court has no further jurisdiction to act upon the judgment appealed from until the appeal has been terminated." *Schumacher v. Radiomaha*, 619 N.E.2d 271, 273 (Ind.1993). "The rule does not promote form over substance; it facilitates the orderly presentation and disposition of appeals and prevents the confusing and awkward situation of having the trial and appellate courts simultaneously reviewing the correctness of the judgment." *Donahue v. Watson*, 413 N.E.2d 974, 976 (Ind. Ct.App.1980). Here, the last notice of completion of the clerk's record was filed on February 18, 2003; Irwin Union filed its motion to rescind on March 12, 2003; and the trial court granted the motion on June 2, 2003. Thus, the trial court ruled on Irwin Union's motion to rescind after we acquired jurisdiction over the case.

However, we have recognized situations in which a trial court may retain jurisdiction over certain matters notwithstanding a pending appeal. *City of New Haven v. Allen County Bd. of Zoning Appeals*, 694 N.E.2d 306, 310 (Ind.Ct.App. 1998), *trans. denied.* "Specifically, a trial court retains jurisdiction to perform such ministerial tasks as reassessing costs, correcting the record, or enforcing a judgment." *Id.* Our supreme court has recognized that where the subject of the appeal is " 'entirely independent of the issues to be tried[,]' " subsequent trial court action does not interfere with the jurisdiction of the appellate court. *Bradley v. State*, 649 N.E.2d 100, 106 (Ind.1995) (declining to hold that an appeal from the denial of bail impinges the jurisdiction of the trial court to proceed with trial).

Irwin Union relies on *Donahue* in support of its argument that the trial court had jurisdiction to rescind the transfer of stock while the second appeal was pending.[8] In *Donahue,* the trial court entered

---

motions panel of this court has already ruled upon this issue, we may reconsider that ruling." *State v. Moore*, 796 N.E.2d 764, 766 (Ind.Ct.App.2003) (citing *Davis v. State*, 771 N.E.2d 647, 649 n. 5 (Ind.2002)), *trans. denied.*

6. We deny Leo's motion to strike portions of Irwin Union's argument and conclusions.

7. Leo appears to argue that the trial court was without the power to rule on the issue of rescission during the guardianship proceeding. Because the trial court specifically limited the guardianship proceedings to the question of Josephine's incapacity and Leo does not explain how the trial court would be without jurisdiction in a subsequent action for rescission, we fail to see how this argument is relevant to the issues on appeal today.

8. Irwin Union also argues that Leo waived any issues of personal jurisdiction by participating in the guardianship proceedings. It is undisputed that Leo participated in the guardianship proceeding; however, it is unclear how the issue of personal jurisdiction relates to the facts of this case. The issue we address today is whether the trial court had subject matter jurisdiction to grant Irwin Union's motion to rescind after the notice of completion of the clerk's record was filed. The lack of

findings that the plaintiff was entitled to attorney fees, but it did not actually award the fees in its order and judgment. *Donahue*, 413 N.E.2d at 975. After the notice of completion of the clerk's record had been filed with this court, the trial court entered a second judgment ordering Donahue to pay $10,000 in attorney fees. *Id.* On appeal from the award of attorney fees, Donahue argued, "the trial court lost jurisdiction over the entire subject matter of this controversy when the record of proceedings was initially filed with the clerk of our court...." *Id.*

We concluded that the general policies for terminating the trial court's jurisdiction when the notice of completion of the clerk's record is filed did not apply to the facts of this case. *Id.* at 976. We concluded:

> [T]he issues presently before this court could not have been raised during the initial appeal. The trial court impliedly reserved this ancillary matter until an evidentiary hearing could be conducted and a determination made as to what a reasonable fee would be. Indeed, we believe this practice is contemplated by our rules of civil procedure. Ind. Rules of Procedure, Trial Rule 54(B) allows the trial court to direct the entry of a final judgment as to one or more but fewer than all the claims of the parties. We hardly think the trial court thereby loses jurisdiction to adjudicate those claims which remain unresolved. Therefore, we hold the trial court retained limited jurisdiction over the case to those claims left unresolved by the first judgment.

*Id.*

Irwin Union argues that the trial court impliedly reserved the issue of the stock transfer, an ancillary and unresolved issue,

until a separate hearing could be held. The trial court specifically limited the issues at the guardianship hearing to whether Josephine was incapacitated and whether a guardian should be appointed. *See* Appellant's App. Vol. I. p. 70. Because the actual rescission of the stock transfer was not at issue during the guardianship hearing, we agree that rescission was an issue appropriate for a separate hearing. However, because Irwin Union's motion to rescind was based entirely on the findings from the guardianship proceeding and no separate evidentiary hearing was held on the issue of rescission, we cannot conclude that the trial court properly granted Irwin Union's motion to rescind while the appeal of the trial court's ruling on the guardianship proceeding was pending.

Irwin Union contends, "the order of rescission did not prevent *this* Court's ability to review the merits of the [trial court's] findings...." Appellee Irwin Union's Br. p. 13. We disagree with this argument. Irwin Union's motion to rescind was based entirely on the trial court's findings of undue influence in the context of the guardianship proceeding, upon which the trial court based its conclusion that Josephine was incapacitated. Because Leo was appealing the manner in which the guardianship hearing was conducted, the trial court's findings, including those of undue influence, were at issue on appeal.

Put another way, if we had reversed the trial court's order on the guardianship proceedings, the basis for granting Irwin Union's motion to rescind would be brought into question. Thus, the very purpose of limiting the jurisdiction of the trial court while appeals are pending would have been defeated because such a scenario does not facilitate the orderly presentation and dis-

subject matter jurisdiction is an issue that cannot be waived. *Town Council of New Har-*

*mony v. Parker,* 726 N.E.2d 1217, 1223 n. 8 (Ind.2000).

position of appeals and does not prevent the confusing and awkward situation of having the trial and appellate courts simultaneously reviewing the correctness of the judgment. *See Donahue*, 413 N.E.2d at 976; *see also Southwood v. Carlson*, 704 N.E.2d 163, 166 (Ind.Ct.App.1999) (recognizing that the purpose of the jurisdictional rule is implicated where appeal is pending and trial court rules on a party's Indiana Trial Rule 60(B) motion).

Unlike *Donahue*, where the issue of attorney fees was before the trial court but remained unresolved when the trial court issued its order, rescission was not at issue before the trial court during the guardianship proceeding and did not remain as an unresolved issue of the guardianship proceeding when the trial court issued its order. Finally, because Irwin Union's motion to rescind relied entirely on the findings from the guardianship proceeding we cannot conclude that it is ancillary to the subject of the previous appeal.

Because Irwin Union's motion to rescind was based entirely on the guardianship proceeding, the trial court was without jurisdiction to rule on the motion after the notice of completion of the clerk's record was filed on February 18, 2003. However, had Irwin Union's motion to rescind been

founded on a basis other than the findings from the guardianship proceeding, such as a separate evidentiary hearing or a trial on the matter, then the matter would have been sufficiently removed from the guardianship proceeding so as to permit the trial court to exercise jurisdiction over the matter.[9]

We note that we are fully aware of the possibility that our decision to remand will only create additional litigation in this case, which has already been incredibly litigious. However, despite our inclination to minimize any unnecessary litigation, we decline to speculate as to the numerous issues the parties may raise in a subsequent action to set aside the stock transfer or how the trial court will rule on those issues. *See Richardson v. Calderon*, 713 N.E.2d 856, 863 (Ind.Ct.App.1999) (recognizing we generally consider only those issues that were briefed and argued by the parties before the trial court and that the trial court considered and ruled upon), *trans. denied; INS Investigations Bureau, Inc. v. Lee*, 709 N.E.2d 736 742 (Ind.Ct.App.1999) ("This court may not issue advisory opinions."), *trans. denied.*

## II. Attorney Fees[10]

Leo also argues that the trial court erred in granting Joseph's request

---

9. Because we reverse the granting Irwin Union's motion to rescind the stock transfer, it is unnecessary for us to address the denial of Leo's motion for change of judge filed in response to that motion. In any case, although Leo mentions Indiana Trial Rule 76(C), lists several cases in which change of judge motions were granted, and provides numerous reasons as to why Irwin Union should be treated as a "new" party, he fails to provide us with analysis of the facts of this case as they relate to the requirements Indiana Trial Rule 76. Appellant's Br. p. 40. We decline to develop such an analysis for him.

10. During the hearing on Joseph's petition for attorney fees, Irwin Union filed an exhibit and

offered testimony indicating that $176,621.74 of Joseph's requested attorney fees were either duplicative or not directly related to the guardianship proceeding. On appeal, Irwin Union's argument regarding the award of attorney fees provides in its entirety, "Irwin Union Bank finds that the fees incurred by Joseph Hickman and approved by the trial court are reasonable." Appellee Irwin Union's Br. p. 23. We remind Irwin Union, "As a general rule, a party may not change its theory on appeal and present arguments that are different from those raised in the trial court." *In re T.M.Y.*, 725 N.E.2d 997, 1002 (Ind.Ct.App.2000), *trans. denied.* However, because we do not rely on Irwin Union's

for attorney fees because Joseph's request for $367,043.50 in fees was unreasonable. Indiana Code Section 29–3–9–9(a) provides: "Whenever a guardian is appointed for an incapacitated person or minor, the guardian shall pay all expenses of the proceeding, including reasonable medical, professional, and attorney's fees, out of the property of the protected person." We review the trial court's award of attorney fees to Joseph for an abuse of discretion. See I.C. § 29–3–2–4; *In re Wickersham,* 594 N.E.2d 498, 501 (Ind.Ct.App.1992). An abuse of discretion occurs only if the judgment is against the logic and effect of the facts and circumstances before the court, together with any reasonable inferences arising therefrom. *Wickersham,* 594 N.E.2d at 501. We have recognized that the trial judge possesses personal expertise that he or she may use when determining reasonable attorney fees. *Id.*

■ In probate and estate administration cases, we have recognized several factors the trial court may consider when ascertaining the value of services rendered by the personal representative and attorneys. *Id.* We have found those factors to be relevant to the determination of attorney fees in guardianship proceedings. *See id.* Those factors include:

the labor performed, the nature of the estate, the difficulties encountered in recovering the estate's assets, settlements in the estate, the peculiar qualifications of the guardian and attorneys, the faithfulness and care of the guardian and attorneys, and all other factors necessary to aid the court in a consideration fair to the estate and reasonable for the guardian and attorneys.

*Id.*

■ Leo does not address these factors in either his original brief or in his reply brief.[11] He contends that Joseph's request for attorney fees is unreasonable because there was no written fee agreement between Joseph and his attorneys. Leo offers no authority in support of this argument and waives the argument on appeal. *See Loomis v. Ameritech Corp.,* 764 N.E.2d 658, 668 (Ind.Ct.App.2002) (citing App. R. 46(A)(8)(a)), *trans. denied.*

■ Leo also contends that Joseph employed too many attorneys and questions the involvement of multiple attorneys in "virtually every facet of this case." Appellant's Br. p. 45. Although we agree that this was a highly litigious matter, we cannot conclude that the fact that several attorneys were involved and often worked together on the matter in and of itself renders the award of attorney fees unreasonable.

■ Leo also asserts, "There was no showing that $340.00 per hour was a reasonable fee for a guardianship case." Appellant's Br. p. 46. He points out that Irwin Union introduced evidence that the highest paid attorney should receive no more than $250.00 per hour. However, Regina Smith, a Senior Fiduciary Officer from National City Bank's trust department, who reviews the payment of attor-

---

argument regarding attorney fees, we deny Leo's motion to strike this portion of its brief.

11. In support of his argument that the attorney fees Joseph requested were unreasonable, Leo cites to Indiana Professional Conduct Rule 1.5, which governs fee arrangements between attorneys and their clients. Leo, however, fails to explain how this rule applies to our determination of whether the trial court's award of attorney fees to Joseph is reasonable and does not apply the various considerations in the rule to the facts of this case. Thus, this argument is waived. *See Loomis,* 764 N.E.2d at 668 (citing Indiana Appellate Rule 46(A)(8)(a) for the proposition that failure to present a cognizable argument waives the issue on appeal).

ney fees, testified that $250.00 to $340.00 per hour was "normal" for someone with the experience of the attorneys involved in this case. Tr. p. 188. There is evidence supporting Joseph's request for attorney fees in the amount of $340.00 per hour for certain attorneys who worked on the case.

 Leo argues that the award of attorney fees includes fees associated with issues outside the scope of the guardianship proceeding, including time associated with Hoosier Outdoor, the discontinuation of Josephine's and Leo's siblings' health insurance, and ethical issues. However, Indiana Code Section 29–3–9–9(b) provides, "The expenses of any other proceeding under this article that results in benefit to the protected person or the protected person's property shall be paid from the protected person's property as approved by the court." It may well be that attorney fees for some aspects of the litigation may have been related more to matters concerning the termination of health insurance for Leo's siblings than related directly to matter of the guardianship itself. Be that as it may, Leo has not isolated specific fees that he seeks to challenge. Accordingly, we will not review the fee award for any seeming inclusion of non-guardianship matters. Without more, we cannot conclude that the trial court abused its discretion in determining that the fees associated with these other matters benefited Josephine.[12]

 Leo also argues that the trial court should not have awarded Joseph's request for fees after the guardian ad litem was appointed. He contends that because the guardian ad litem was involved

to represent Josephine's interests, Joseph's further involvement was not necessary. A trial court is required to appoint a guardian ad litem to represent the interests of the person alleged to be incapacitated. I.C. § 29–3–2–3. This section does not require that the guardian ad litem also petition for the appointment of a permanent guardian, as Joseph did. Any person may file a petition for the appointment of a guardian for an incapacitated person. See I.C. § 29–3–5–1. Unlike the guardian ad litem, the petitioner is not required to act in accordance with the incapacitated person's best interests. Given that Joseph's interests as the petitioner might have been different from Josephine's interests, Leo's argument that Joseph's request for attorney fees after a guardian ad litem was appointed was unreasonable is without merit.

 In analyzing the factors in *Wickersham,* Joseph points out that the guardianship proceeding was a particularly labor intensive task; that Josephine's estate is quite large; that there were many difficulties involved in prosecuting the case because it was very adversarial; that his attorneys were highly qualified; and that his attorneys worked faithfully on the case. Although the attorney fees in this case are considerable, based on the arguments before us and the evidence from the hearing on the petitions for attorney fees, we cannot conclude that the trial court abused its discretion in awarding attorney fees to Joseph.

## Conclusion

The trial court did not have jurisdiction to grant Irwin Union's motion to rescind

12. To the extent that Leo argues that the trial court improperly awarded attorney fees associated with time the parties spent in federal court, we find no merit in his contention that such was improper. Whether the federal court denied Joseph's request for Leo to pay his attorney fees is an entirely different question from whether it was permissible for the trial court to order Irwin Union to pay Joseph's attorney fees as expenses that benefit Josephine.

the July 19, 2001 stock transfer based on the findings of the guardianship proceeding while an appeal on the matter was pending. Leo has not established that the trial court's award of attorney fees to Joseph was unreasonable. We affirm in part and reverse in part.

Affirmed in part and reversed in part.

CRONE, J., and SULLIVAN, J., concur.