**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROGER L. BUSHHORN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 40A01-1107-CR-315 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable Jon W. Webster, Judge
Cause No. 40C01-1001-FA-10

**February 16, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Roger Bushhorn appeals his sentence for kidnapping as a class A felony, criminal confinement while armed with a deadly weapon and resulting in serious bodily injury as a class B felony, criminal confinement while armed with a deadly weapon as a class B felony, and attempted escape while armed with a deadly weapon as a class B felony. Bushhorn raises three issues, which we revise and restate as:

I.      Whether Bushhorn's sentence is inappropriate in light of the nature of the offense and the character of the offender; and

II.     Whether the trial court had the authority to issue its amended sentencing order.

We affirm in part, reverse in part, and remand.

The relevant facts follow. On October 6, 2009, Bushhorn and two other inmates in the Jennings County jail, James Smith and Ryan Renfroe, were involved in an attempt to escape from the jail. One or two days prior to October 6, 2009, Bushhorn and Smith retrieved laundry baskets, which had metal rods or hangers inside, while they were out of their cells. Bushhorn and Smith broke up the baskets, took the metal rods, and "sharpened them underneath the cell by scratching them on the concrete in the blocks" to make "shanks." Transcript at 24.

On October 6, 2009, Bushhorn and Smith were housed in one holding cell, and Renfroe was in another cell. Bushhorn called jailer Vickie Day to his cell to allow him to use the restroom. Bushhorn exited the cell to use the restroom, and Smith asked to leave the cell as well. Day declined Smith's request and went to shut the door, but Smith forced the door open and forced Day to the ground. Bushhorn "ran to make sure that [Day] was on the ground, pulled the keys off of her belt, [and] ran behind the counter,

2

obtained chemical agent, keys to unlock the cell, and the walky talky." Id. at 24. Bushhorn then let Renfroe out of his cell, and the shanks were distributed.

Bushhorn "got on the radio and had them unlock the door that leads [] out into the hallway, which is still a secure part of the jail," and the three men proceeded from the control area out into the hallway. Id. at 25. The inmates then "proceeded to the north door, which leads them to the Sally Port, to where they would've been outside the jail." Id. Bushhorn, who "was doing a lot of the radio traffic to the control," made a "comment to the controller that if you do not open the door within ten seconds, [] Smith's going to start stabbing [] Day." Id. The door did not open, and Smith started stabbing Day.

At some point, jailers Walter Peace and Shawn McDaniel entered the hallway, and Bushhorn and Smith sprayed Peace and McDaniel with the chemical agent. Smith struck Peace in the head with a shank and then stabbed him in the chest, just above the heart, with the shank. Bushhorn handcuffed McDaniel. Other officers eventually entered the hallway and subdued Bushhorn and the other inmates.

On January 6, 2010, the State charged Bushhorn with Count I, kidnapping as a class A felony for the confinement of Walter Peace; Count II, kidnapping as a class A felony for the confinement of Vickie Day; Count III, kidnapping as a class A felony for the confinement of Shawn McDaniel; Count IV, criminal confinement while armed with a deadly weapon and resulting in serious bodily injury as a class B felony for the confinement of Walter Peace; Count V, criminal confinement while armed with a deadly weapon and resulting in serious bodily injury as a class B felony for the confinement of Vickie Day; Count VI, criminal confinement while armed with a deadly weapon as a

3

class B felony for the confinement of Shawn McDaniel; Count VII, attempted escape while armed with a deadly weapon as a class B felony; Count VIII, attempted escape resulting in bodily injury to Peace, Day, and McDaniel as a class B felony; Count IX, battery while armed with a deadly weapon and resulting in serious bodily injury as a class C felony for the battery of Peace; Count X, battery while armed with a deadly weapon and resulting in serious bodily injury as a class C felony for the battery of Day; and Count XI, battery while armed with a deadly weapon and resulting in bodily injury as a class C felony for the battery of McDaniel. On June 6, 2011, Bushhorn pled guilty as charged to Counts II, IV, VI, and VII, and the State agreed to dismiss the other charges.[1]

At the sentencing hearing on July 5, 2011, the court viewed a video recording of the incident taken from the jail and heard testimony from Indiana State Police Detective Roger G. Drew, II, who interviewed Bushhorn following the incident, jailer McDaniel, Bushhorn's mother Tara Hahn and grandmother Nicole Smith, and Bushhorn. Detective Drew testified that, during the interview with Bushhorn following the incident, Bushhorn "identified that he was the individual that coordinated this attempted jail escape" and that for the most part "he was very honest on the aspect of what happened." Transcript at 27. Detective Drew testified that Bushhorn indicated that Renfroe, "for an individual that was being incarcerated for murder was a p---y," that Bushhorn regretted even asking Renfroe to take part in the escape attempt, and that the recording shows that Bushhorn and Smith were the people that were doing most of the activity. Id. at 28.

---

[1] There was no agreement with regard to Bushhorn's sentence.

On cross examination, Detective Drew testified that Smith was incarcerated in the Jennings County jail for robbery. Detective Drew further testified that "the tools were originally designed to where [Bushhorn] and [] Smith thought they were going to pick their way out through the block, the concrete wall" but that "there's a big difference between trying to work your way out of the jail . . . and sharpening an object, as far [as] the motions." Id. at 30. Detective Drew indicated that neither Renfroe nor Bushhorn stabbed anyone during the escape attempt and that Smith was the only person who actually stabbed someone. Detective Drew testified that both Bushhorn and Smith "had an act in [deploying] the chemical agent." Id. at 31. Detective Drew further indicated that Bushhorn recounted during his interview that Smith had stabbed Day multiple times, stabbed Peace, and attempted to stab the other jailer, and Bushhorn had asked if any of them died. On re-direct examination, Detective Drew testified that Bushhorn stated that the inmates "focused specifically on this shift" because it "was the most vulnerable shift and [] Day was a nice jailer to them and she was the most vulnerable." Id. at 35. Detective Drew testified that Bushhorn explained how he watched the jail staff, listened to the radio traffic, and watched where they kept their possessions, the keys, and the chemical agent.

McDaniel testified that he received an apology letter from Bushhorn "saying that he was forced into this" but that his "opinion on this is, if he was truly forced into this, he had multiple opportunities from the time he left that cell even up to the end to back out of it." Id. at 45.

5

Bushhorn testified that he had "apologized face-to-face to" Day, Peace, and McDaniel and that he also sent letters to them asking for forgiveness. Id. at 58. Bushhorn further testified that he was the only inmate involved in the escape attempt that did not have a history of violence, that Smith was in jail for robbery, and that Renfroe was in jail for homicide. Bushhorn also indicated that, when he was on the radio and threatened to stab Day if the door did not open, he "was relaying a message that [Smith] told [him] to tell them." Id. at 63. Bushhorn testified that "[n]o one was ever supposed to get hurt and then [Smith] just lost control and I didn't know what to do . . . ." Id. at 64. Bushhorn testified that he "did try to dig out . . . for about two weeks . . . [b]ut the wall was so hard . . . and that's how [the hangers] got filed down." Id. at 67.

The trial court found as aggravating factors Bushhorn's criminal history; the fact that "the escape attempt was well planned and devised, including the preparation of deadly weapons and learning the routines of jail staff;" victim Day "was physically weaker, being a female and handcuffed;" McDaniel was handcuffed; "jailer Peace was less than one (1) inch and an ID badge from being killed during this attempted escape;" and Bushhorn "had several opportunities to break off the escape and did not." Appellant's Appendix at 88. At sentencing, the court stated that "even though you're not charged with actually inflicting the injuries on Officer Peace, he was literally an inch and an ID card from being stabbed to death, just a lucky break." Transcript at 75. The court found as mitigating factors Bushhorn's admission of his crimes without the necessity of a trial; Bushhorn has his GED certificate; Bushhorn is remorseful; and Bushhorn's relatively young age. The court found that the aggravating factors outweighed the

6

mitigating factors and justified the imposition of a sentence in excess of the advisory sentence.

The court sentenced Bushhorn to thirty-five years, three years of which were suspended, for his conviction under Count II and six years for each of his convictions under Counts IV, VI, and VII. The court ordered the sentences under Counts II, IV, and VI to be served consecutive to each other and the sentence under Count VII to be served concurrently with the sentences under the other counts. Thus, the court imposed an aggregate sentence of forty-seven years, with three years suspended. The court also ordered that Bushhorn receive 1,274 credit days for time served in the Jennings County jail. The court further ordered the sentence imposed under this cause number to be served consecutive to sentences imposed under two separate cause numbers.

On July 7, 2011, Bushhorn filed a notice of appeal. On July 21, 2011, a notice of completion of the clerk's record was filed with this court. The July 21, 2011 filing was returned to the trial court clerk because it did not indicate the status of the transcript. On July 22, 2011, the trial court issued an amended sentencing order and abstract of judgment which indicated that Bushhorn was to receive zero days of credit time.[2] On

---

[2] In its amended order, the court found:

> [Bushhorn] shall receive zero (0) credit days. At the time these offenses occurred on October 6, 2009, [Bushhorn] was being held in the Jennings County Jail as an Indiana Department of Correction inmate serving a sentence out of Ripley County [] and Decatur County []. As these Jennings County convictions are mandatorily consecutive to these (2) sentences, [Bushhorn] has zero (0) credit days in this Jennings County case as all days served since October 6, 2009 have been applied either to his Ripley County Sentence or his Decatur County sentence. See Ind. Code § 35-50-1-2(d)(1).

Appellant's Appendix at 100.

July 28, 2011, the trial court clerk issued an amended notice of completion of clerk's record to this court. However, the certificate of service was not dated and a notice of defect was mailed. An entry dated August 2, 2011, in the chronological case summary ("CCS") indicates that the trial court clerk issued an amended notice of completion of the clerk's record with corrected date of certified copies.

I.

The first issue is whether Bushhorn's sentence is inappropriate. Indiana Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate.[3] Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Bushhorn "does not dispute the seriousness of the charges and he has never denied his involvement in them" but argues that there "is nothing in the character of the offenses . . . that exceeds the conduct contemplated by the legislature." Appellant's Brief at 9. Bushhorn argues that he was twenty years old, that he pled guilty and never denied his involvement or culpability, that he has a supportive family network, that he acted under provocation and never intended to cause harm to anyone, expressed remorse for his conduct, and stipulated to a restitution amount and agreed to be responsible for the full

---

[3] We observe that Bushhorn also argues that the trial court abused its discretion in sentencing him. However, we need not address this issue because we elect to exercise our option to review Bushhorn's sentence under Ind. Appellate Rule 7(B). See Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007) (holding that where the court on appeal finds that a trial court abused its discretion in sentencing the defendant, the court may either remand for resentencing or exercise the appellate court's authority to review the sentence under Ind. Appellate Rule 7(B)), reh'g denied.

amount. Bushhorn also argues that all of his juvenile and adult history "has been non-violent theft related crimes" and "[t]here is nothing about his criminal history that would support an inference of a character or propensity for [k]idnapping or [c]onfinement." Id. at 10.

The State argues that Bushhorn recruited Renfroe, who was charged with murder, into his crew, that the men stole metal hangers and made shanks, and that Bushhorn targeted Day because she was nice and the most vulnerable jailer. The State points out that Day was fifty-six years old and that Peace was sixty-seven years old. The State argues that Peace was "literally an inch and an ID card from being stabbed to death." Transcript at 74-75. The State argues further that although Bushhorn's previous convictions were for crimes against property, his crimes are escalating and that in his three years as an adult, Bushhorn has now accumulated five felonies.

Our review of the nature of the offense reveals that Bushhorn and two other inmates attempted to escape from the Jennings County jail and that the inmates prepared metal shanks, observed the jail staff, planned the time of the attempt, and made the escape attempt during a particular shift due to the vulnerability of jailer Day. Bushhorn pulled the keys off of Day's belt, obtained a chemical agent and a radio, and released Renfroe from his cell. Using the radio, Bushhorn stated that if the door was not opened within ten seconds Smith was going to start stabbing Day. Further, Bushhorn deployed the chemical agent and handcuffed McDaniel. During the incident, Smith stabbed Day multiple times and hit Peace in the head and stabbed him in the chest. Our review of the character of the offender reveals that Bushhorn has a criminal history which includes

9

burglary as a class C felony in July 2009, theft as a class D felony in September 2009, and multiple misdemeanor convictions and juvenile adjudications.

However, as the trial court observed, Bushhorn admitted to his crimes without the necessity of a trial, and he pled guilty without an agreement as to sentencing. Bushhorn was twenty years old at the time of the offenses, and, although a criminal defendant may be responsible for the damage caused by his or her accomplices, Bushhorn was not the inmate who stabbed Day and Peace during the escape attempt. We also observe that Bushhorn received sentences which were below the advisory sentences for his convictions in connection with his offenses against jailers Peace (Count IV) and McDaniel (Count VI) and a sentence above the advisory sentence for his conviction in connection with his offense against jailer Day (Count II).

After due consideration and under the circumstances, we conclude that Bushhorn has met his burden of establishing that his forty-seven year sentence is inappropriate in light of the nature of the offense and his character. Pursuant to Appellate Rule 7(B), we exercise our authority to revise Bushhorn's sentence for his conviction under Count II to thirty-five years executed in the Department of Correction, to run concurrently with the six-year sentences imposed by the trial court under Counts IV, VI, and VII, for an aggregate sentence of thirty-five years, and we remand with instructions to resentence Bushhorn accordingly.[4] See Koch v. State, 952 N.E.2d 359, 376 (Ind. Ct. App. 2011) (concluding that the defendant's aggregate sentence of forty-five years for kidnapping as

---

[4] We note that the trial court need not hold a formal sentencing hearing.

a class A felony, two counts of criminal confinement as class B felonies, robbery as a class A felony, and battery as a class C felony was inappropriate and remanding with instructions to impose an aggregate sentence of thirty years), trans. denied.

## II.

The next issue is whether the trial court had the authority to issue its amended sentencing order. Bushhorn argues that the court did not have the authority to issue the July 22, 2011 amended sentencing order modifying his credit time because this court had acquired jurisdiction under Ind. Appellate Rule 8 as the notice of completion of the clerk's record was filed on July 21, 2011. The State argues that the July 21, 2011 notice of completion was defective and was not corrected until August 5, 2011, and that thus the trial court retained the authority to remove the days it had erroneously credited Bushhorn. The State further argues that this court has acknowledged certain exceptions permitting a trial court to retain jurisdiction, such as to correct the record. The State also appears to argue that the court did not err in modifying Bushhorn's credit time.

Pursuant to Ind. Appellate Rule 8, "The Court on Appeal acquires jurisdiction on the date the trial court clerk issues its Notice of Completion of Clerk's Record." See also Jernigan v. State, 894 N.E.2d 1044, 1046 (Ind. Ct. App. 2008) (citing Clark v. State, 727 N.E.2d 18, 20 (Ind. Ct. App. 2000) (once an appeal is perfected, trial court loses subject matter jurisdiction over the case), trans. denied). The policy underlying the rule is to facilitate the efficient presentation and disposition of the appeal and to prevent the simultaneous review of a judgment by both a trial and appellate court. Jernigan, 894 N.E.2d at 1046 (citing Clark, 727 N.E.2d at 21). There are exceptions to this general rule

11

which permit the trial court to retain jurisdiction notwithstanding an appeal, such as "to reassess costs, correct the record, enforce a judgment, continue with a trial during an interlocutory appeal concerning venue, or preside over matters which are independent of and do not interfere with the subject matter of the appeal." Id. at 1046-1047.

On July 7, 2011, Bushhorn filed a notice of appeal. While the CCS shows that a notice of completion of the clerk's record was filed with this court on July 21, 2011, the filing was returned to the trial court clerk because it did not indicate the status of the transcript. On July 22, 2011, the trial court issued its amended sentencing order and abstract of judgment which indicated that Bushhorn was to receive zero days of credit time. On July 28, 2011, the trial court clerk issued an amended notice of completion of clerk's record to this court, but the certificate of service was not dated and a notice of defect was mailed. The trial court's chronological case summary ("CCS"), in an entry dated August 2, 2011, states: "SENT AMENDED NOTICE OF COMPLETION OF CLERK'S RECORD WITH CORRECTED DATE OF CERTIFIED COPYS [sic] TO PARTIES BY CERT MAIL," and this court issued a notice of defect cured on August 8, 2011. Appellant's Appendix at 11. A notice of completion of transcript was issued on October 3, 2011. We cannot say that the trial court did not have the authority or jurisdiction to issue its July 22, 2011 amended sentencing order.[5] See In re Guardianship

---

[5] Bushhorn also appears to argue, in the alternative, that the court's July 22, 2011 amended sentencing order, at least with respect to any changes made to Bushhorn's credit time, is improper because the court was required to provide him with written notice and an opportunity to be heard under Ind. Code 35-38-1-15. Bushhorn does not cite to authority to show the statute applies to a court's *sua sponte* correction of its credit time calculation. Further, we have previously stated that "credit toward one's criminal sentence for time in confinement prior to sentencing is not part of the actual sentence," that "[r]ather, it is a statute-driven calculation of the days the defendant has already served while waiting for

12

of Hickman, 811 N.E.2d 843, 848 (Ind. Ct. App. 2004) (noting that the date of the trial court's ruling was after the filing of the "last notice of completion of the clerk's record" and thus after this court acquired jurisdiction over the case), trans. denied.

For the foregoing reasons, we reverse and remand with instructions to revise Bushhorn's sentence to an aggregate term of thirty-five years in accordance with Part I of this opinion, and in all other respects we affirm.

Affirmed in part, reversed in part, and remanded.

MAY, J., and CRONE, J., concur.

---

his or her trial and sentencing," and that "[i]n fact, the trial court's determination of credit time is subject to modification thereafter by the Department of Correction pursuant to statutory procedures." Buchanan v. State, 956 N.E.2d 124, 127 (Ind. Ct. App. 2011). We cannot say that any failure to comply with Ind. Code 35-38-1-15 prior to issuing an order modifying Bushhorn's credit time under the circumstances requires reversal.