**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 12 2013, 5:35 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**PHILLIP J. TROYER, ESQUIRE**
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PHILLIP J. TROYER, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1302-DR-55 |
| | ) | |
| TRACY L. TROYER, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Thomas P. Boyer, Magistrate
Cause No. 02D07-1105-DR-365

**September 12, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

## RILEY, Judge

## STATEMENT OF THE CASE

Appellant-Respondent, Phillip J. Troyer (Phillip), appeals the trial court's Order finding him in contempt.

We affirm.

## ISSUES

Phillip raises four issues on appeal, which we consolidate and restate as the following three issues:

(1) Whether the trial court possessed jurisdiction to find Phillip in contempt of the court ordered final Decree;

(2) Whether the trial court deprived Phillip of due process by not issuing a rule to show cause prior to finding him in contempt; and

(3) Whether the trial court abused its discretion by finding Phillip in contempt.

## FACTS AND PROCEDURAL HISTORY

This is the second appeal in this family dispute. *See Troyer v. Troyer*, 987 N.E.2d 1130 (Ind. Ct. App. 2013), *reh'g denied* (*Troyer I*). Because some of the facts from the prior appeal are relevant, we repeat them here. Phillip and Appellee-Petitioner, Tracy Troyer (Tracy), were married in January 1993 and had one child, K.T., who was born in April 2000. *Id*. at 1133. On May 3, 2011, Tracy filed a third petition for dissolution of the marriage and on July 15, 2011, the trial court entered a provisional order, which ordered Tracy "to maintain health insurance for K.T." *Id*. at 1133. In April 2012, the trial court dissolved the parties' marriage and on June 29, 2012, the trial court entered its

2

decree (Final Decree), awarding the parties joint legal custody of K.T. Paragraph 50 of the Final Decree addressed the parties' obligations for K.T.'s uninsured medical expenses and:

> as of January 1, 2012 […  Tracey] was to be responsible for the payment of the first $1089
>
>> of uninsured medical, dental, optical, pharmaceutical, orthodontia, counseling and therapy expense for [K.T.] each year, and thereafter, [Tracy] shall be responsible for the payment of fifty-nine percent (59%) and [Phillip] shall be responsible for the payment of forty-one percent (41%) of the aforesaid uninsured health care expenses for [K.T.] each year.

*Id. at* 1142. Paragraph 80 of the Final Decree provided as follows:

> 80. The order entered at Paragraph 50 herein includes [K.T.]'s treatment at the Eating Recovery Center and travel expenses (airline and lodging) for [K.T., [Tracy], and [Phillip]] with respect to K.T.'s treatment. As noted at Paragraph 50, this is a family problem and requires a family resolution. The attendance and participation by [Tracy] and [Phillip] at the Eating Recovery Center along with the education and information provided to [Tracy] and [Phillip] are important components to [K.T.]'s recovery.

*Id*. at 1144.

On July 3, 2012, Tracy emailed Phillip her calculation of his share of K.T.'s uninsured medical expenses under the Final Decree. That same day, Phillip refused to pay, emailing Tracy that, "I will obviously be appealing [the Final Decree], so don't expect that check anytime soon." (Appellant's App. p. 20). On July 13, 2012, Phillip filed a Notice of Appeal, contesting various provisions of the Final Decree, including the trial court's retroactive application of Phillip's obligation for K.T.'s uninsured medical

3

expenses. On August 9, 2012, the trial court clerk issued the Notice of Completion of Clerk's Record.

On August 23, 2012, Tracy filed her petition for citation for contempt, alleging that Phillip's willful failure to pay his share of K.T.'s uninsured medical expenses was in contempt of his obligations under the Final Decree. In particular, she alleged that under the Final Decree, Phillip owed her $26,642.72, consisting of child support, uninsured medical expenses for 2011 and 2012, extracurricular expenses, and travel expenses relating to K.T.'s treatment at the Eating Recovery Center in Colorado. Tracy also requested attorney fees and sought termination of joint custody of K.T. On August 27, 2012, Phillip filed his response to Tracy's contempt petition and also filed a request for a stay pending appeal. That same day, the trial court held a case management conference, attended by both parties. After discussing the trial court's jurisdiction in light of Phillip's appeal, the trial court acknowledged that although it did not have jurisdiction to modify the Final Decree, it retained jurisdiction to enforce it. Phillip admitted that, "I think the [trial c]ourt does have continuing jurisdiction pending the appeal and I'm not disputing that." (Aug. 27, 2012 Transcript p. 16).

On September 21, 2012, the trial court held another case management conference. Phillip raised an issue regarding the denial of benefits by Tracy's health insurer for K.T.'s eating disorder treatment. Phillip argued that the denial was improper and therefore he was not liable for such uninsured medical expenses. He also sought an order granting him control of a bad faith claim against Tracy's health insurer, despite Tracy's retention

4

of separate counsel to pursue the claim. That same day, the trial court issued an order scheduling a hearing for November 8, 2012 on Tracy's contempt petition and control of the bad faith claim.

On November 8, 2012, the trial court held a hearing. Tracy appeared and gave evidence on the amount of uninsured medical expenses that she alleged Phillip had not paid. She testified that Phillip owed her $19,995.35 for K.T.'s 2012 uninsured medical expenses and $1,832.40 in travel expenses. Although Phillip disputed Tracy's calculation of such amounts, he primarily argued that he was not liable for any amount incurred prior to the date of the Final Decree and that expenses in connection with K.T.'s eating disorder treatment were improperly denied by Tracy's health insurer.

On December 3, 2012, the trial court issued its Order, finding Phillip "to be in contempt for his willful and intentional failure to comply with Paragraphs 50 and 80 of the Final Decree." (Appellant's App. p. 13). Specifically, the trial court found that Phillip owed $19,995.35 in uninsured health care expenses from January 1, 2012 and September 18, 2012 and 41% of travel expenses related to K.T.'s eating disorder treatment. The trial court ordered Phillip confined to the Allen County Jail for thirty days to coerce his compliance but suspended it on condition that he pay Tracy within fourteen days after she transferred ownership of K.T.'s 529 education savings account to Phillip. The trial court also ordered Phillip to pay Tracy's attorney fees in the amount of $3,559.45; denied Phillip's request for a stay pending appeal; and "solely authorized"

5

Tracy to pursue a claim against her health insurer for its denial of benefits for K.T.'s eating disorder treatment. (Appellant's App. p. 14).

On April 30, 2013, this court issued its opinion in *Troyer I*. This court agreed with Phillip that the trial court could not make his obligation to pay uninsured medical expenses retroactive to the date of the Final Decree and remanded with instructions to the trial court to amend the Final Decree. *See Troyer*, 987 N.E.2d at 1142. Further, we found that Phillip "did not have a right to pursue" the bad faith claim against Tracy's insurer. *Id*. at 1144.

Phillip now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Phillip challenges the trial court's Order finding him in contempt of his obligations under the Final Decree. Initially, we note that Tracy did not file an appellee's brief. When the appellee has failed to submit an answer brief, we do not undertake the burden of developing an argument on the appellee's behalf. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Rather, we will reverse the trial court's judgment if the appellant presents a case of *prima facie* error. *Id*. *Prima facie* error in this context is defined as, at first sight, on first appearance, or on the face of it. *Id*. Where an appellant is unable to meet this burden, we will affirm. *Id*.

I. *Subject Matter Jurisdiction*

Phillip first argues that the trial court's Order is void for lack of subject matter jurisdiction because of his then-pending appeal of the Final Decree in *Troyer I*. This

6

court acquires jurisdiction over an appealed case on the date the trial court clerk issues its Notice of Completion of Clerk's Record. Ind. Appellate Rule 8. Here, Phillip filed his notice of appeal in *Troyer I* on July 13, 2012, and the trial court clerk issued its Notice of Completion of Clerk's Record on August 9, 2012.

Generally, once an appeal is perfected, the trial court loses jurisdiction over the case. *See Johnson v. State*, 832 N.E.2d 985, 993 (Ind. Ct. App. 2005), *trans. denied*. Thereafter, the trial court has no jurisdiction to modify the judgment. *See Harris v. Harris*, 800 N.E.2d 930, 936 (Ind. Ct. App. 2003), *trans. denied*. "This rule facilitates the orderly presentation and disposition of appeals and prevents the confusing and awkward situation of having the trial and appellate courts simultaneously reviewing the correctness of the judgment." *Southwood v. Carlson*, 704 N.E.2d 163, 165 (Ind. Ct. App. 1999)(quotation omitted).

However, there are limited circumstances in which a trial court may act in a case, notwithstanding a pending appeal. *In re Guardianship of Hickman*, 811 N.E.2d 843, 848 (Ind. Ct. App. 2004), *trans. denied*. Namely, a trial court may perform ministerial tasks such as reassessing costs, correcting the record, or enforcing a judgment. *Id.* Specifically, the filing of an appeal does not prevent the trial court from enforcing its judgment unless a stay of execution is granted. *See* Ind. Trial R. 62(A); App. R. 39(A). Here, Phillip filed a motion to stay execution of the Final Decree, which the trial court denied. Phillip later sought a stay from this court, which was denied on November 9,

2012. Because no stay of execution was granted, we conclude that the trial court retained jurisdiction to enforce the Final Decree and to hold Phillip in contempt.

## II. *Contempt*

Phillip raises two additional challenges to the contempt Order. First, he argues that he was denied due process because the trial court found him in contempt without first issuing a rule to show cause. Second, Phillip argues that the trial court abused its discretion by finding him in contempt based upon its determination that he willfully disobeyed a court order. In particular, Phillip contends that the Final Decree lacked specificity regarding the amount of his obligation to pay uninsured medical expenses and that his appeal of the Final Decree does not constitute willful disobedience with the terms of the Final Decree.

## A. *Rule to Show Cause*

Contempt may be direct or indirect. *See In re Contempt of Wabash Valley Hosp., Inc.*, 827 N.E.2d 50, 62 (Ind. Ct. App. 2005). "Direct contempts involve actions in the presence of the court, so that the court has personal knowledge of them. Indirect contempts, in contrast, undermine the orders or activities of the court but involve actions outside the trial court's personal knowledge." *Id.* The contempt at issue in this appeal is indirect. "An indirect contempt requires an array of due process protections, including notice and the opportunity to be heard." *Id.* These rights are set forth in Ind. Code § 34-47-3-5, which provides:

> (a) In all cases of indirect contempts, the person charged with indirect contempt is entitled:

8

(1) before answering the charge; or

(2) being punished for the contempt;

to be served with a rule of the court against which the contempt was alleged to have been committed.

(b) The rule to show cause must:

(1) clearly and distinctly set forth the facts that are alleged to constitute the contempt;

(2) specify the time and place of the facts with reasonable certainty, as to inform the defendant of the nature and circumstances of the charge against the defendant; and

(3) specify a time and place at which the defendant is required to show cause, in the court, why the defendant should not be attached and punished for such contempt.

Phillip argues that the trial court violated his due process rights by not issuing a rule to show cause as required by statute. However, the record reveals that Phillip never alleged lack of proper notice or protested the absence of a rule to show cause. Nor did he ever contend that he was unaware of Tracy's allegations or that he needed additional time to prepare a defense. Strict compliance with the rule to show cause statute may be excused if it is clear the alleged contemnor nevertheless had clear notice of the accusations against him or her, for example because he or she received a copy of an original contempt information that contained detailed factual allegations. *In re Paternity of J.T.I.*, 875 N.E.2d 447, 451 (Ind. Ct. App. 2007). Here, Phillip participated in two status conferences and fully litigated all the issues raised at the contempt hearing. We therefore conclude that Phillip was not deprived of due process by the trial court.

B. *Abuse of Discretion*

9

The determination of whether a party is in contempt of court is a matter within the trial court's discretion and the trial court's decision will only be reversed for an abuse of that discretion. *Norris v. Pethe*, 833 N.E.2d 1024, 1029 (Ind. Ct. App. 2005). A court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Id.* When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Our review is limited to considering the evidence and reasonable inferences drawn therefrom that support the trial court's judgment. *Id.* Unless after a review of the entire record we have a firm and definite belief a mistake has been made by the trial court, the trial court's judgment will be affirmed. *Id.* Furthermore, this court will only reverse the trial court's contempt judgment if there is no evidence to support it. *Id.*

All orders contained within a dissolution of marriage decree may be enforced by contempt. *Deel v. Deel*, 909 N.E.2d 1028, 1032 (Ind. Ct. App. 2009). The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated. *Id.* A party may not be held in contempt for failing to comply with an ambiguous or indefinite order. *Id.* Otherwise, a party could be held in contempt for obeying an ambiguous order in good faith. *Id.* A person failing to abide by the court's order bears the burden of showing that the violation was not willful. *See Norris*, 833 N.E.2d at 1029. Uncontradicted evidence that a party is aware of a court order and willfully disobeys it is

10

sufficient to support a finding of contempt. *Crowl v. Berryhill*, 678 N.E.2d 828, 830 (Ind. Ct. App. 1997).

Phillip argues that the trial court's failure to issue a rule to show cause prevented him from knowing exactly what was required of him to avoid contempt. However, the record amply reflects Phillip's awareness of his obligations under Paragraphs 50 and 80 of the Final Decree, both of which contained unambiguous language ordering him to pay 41% of K.T.'s uninsured medical as well as a share of travel expenses relating to the Eating Recovery Center. Phillip never made any effort to pay Tracy the amount due. Therefore, Phillip was in willful violation of a clear and certain requirement within the Final Decree. *See Bandini v. Bandini*, 935 N.E.2d 253, 264-65 (Ind. Ct. App. 2010).

Furthermore, the trial court found that Phillip has "adamantly refused to pay his share of [K.T.'s] expenses for treatment." (Appellant's App. p. 12). Phillip's basis for his refusal was that the Final Decree's retroactive application rendered his obligation to pay uninsured medical expenses void. Even if a court's order is erroneous, it must be obeyed until reversed on appeal. *See* <u>Crowl</u>, 678 N.E.2d at 830. A party's remedy for an erroneous order is appeal and disobedience of the order is contempt. *Id*. Because Phillip was aware of his obligations under the Final Decree and elected disobedience, the record supports the trial court's finding of Phillip's willful disobedience.

<u>CONCLUSION</u>

Based on the foregoing, we conclude that the trial court had jurisdiction to enforce Phillip's obligation to pay his share of K.T.'s uninsured medical expenses under the Final

11

Decree.  We also conclude that the trial court did not deprive Phillip of due process by not issuing a rule to show cause.  Finally, we conclude that the trial court did not abuse its discretion by finding Phillip in contempt.

Affirmed.

BRADFORD, J. concurs

BROWN, J. concurs in part and dissents in part with separate opinion

# IN THE
# COURT OF APPEALS OF INDIANA

PHILLIP J. TROYER,                        )
                                          )
    Appellant-Respondent,          )
                                          )
        vs.            )    No. 02A03-1302-DR-55
                                          )
TRACY L. TROYER,                          )
                                          )
    Appellee-Petitioner.           )

**BROWN, Judge, concurring in part and dissenting in part**

While I concur with the majority that the trial court retained jurisdiction to enforce the Final Decree and that Phillip was not deprived of due process, I respectfully dissent from the majority's decision to affirm the court's contempt finding.

As noted by the majority, the determination of whether a party is in contempt of court is a matter within the trial court's discretion, and the trial court's decision will be reversed only for an abuse of that discretion. Norris v. Pethe, 833 N.E.2d 1024, 1029 (Ind. Ct. App. 2005). In addition, to hold a party in contempt for a violation of a court order, the trial court must find that the party acted with willful disobedience. Id.

13

In her petition for citation for contempt, Tracy alleged that Phillip failed to comply with Paragraphs 50 and 80 of the Final Decree. Tracy attached an exhibit to her petition showing an e-mail exchange between the parties. The exhibit shows that Tracy sent an e-mail message to Phillip on July 3, 2012 with her calculation of the amount Phillip owed her under Paragraphs 50 and 80 of the Final Decree. The exhibit also shows that Phillip sent a reply e-mail message to Tracy in which he stated in part that "I will obviously be appealing, so don't expect that check anytime soon," that he "offered to file a claim against Anthem to obtain payment for her treatment, which is an amount we both will owe if the claim is unsuccessful," and "[p]lease let me know if I am authorized to file the claim." Appellant's Appendix at 20.

In his response to the petition for citation for contempt, Phillip noted that Paragraph 71 of the Final Decree awarded him the Indiana 529 account established for K.T., and Phillip attached an exhibit showing that, on July 19, 2012, Tracy sent him an e-mail message in which she wrote:

> I understand you've started the appeals process. I'll just keep myself as custodian of the Indiana 529 Account until things are resolved.

Id. at 28.

Tracy did not oppose or challenge Phillip's statement that he did not plan to transfer to her the amount she had calculated because he was appealing the Final Order, and in fact, Tracy appears to have agreed that neither she, with respect to Paragraph 71 of the Final Decree, nor Phillip, with respect to Paragraphs 50 and 80 of the Final Decree,

14

would transfer the funds owed to each other under the Final Decree until "things are resolved." Id.

In my view, based on Phillip's e-mail message that he was appealing and would retain funds he was obligated to transfer to Tracy under the Final Decree and Tracy's subsequent e-mail message indicating that she understood Phillip had started the appeals process and would retain funds she was obligated to transfer under the Final Decree, I would find that Phillip did not act with willful disobedience. See 17 AM. JUR. 2d *Contempt* § 139 (stating that "A complainant's acquiescence in the violation of an injunction obtained by him is sufficient to relieve the violator from civil contempt charges"); 6 IND. LAW ENCYC. *Contempt* § 9 ("Acquiescing in the doing of a prohibited act while at the same time reaping the benefits is tantamount to ratification.") (citing Caito v. Indianapolis Produce Terminal, Inc., 162 Ind. App. 590, 596, 320 N.E.2d 821, 825 (1974)).

Further, as noted by Phillip in his response, the vast majority of the uninsured medical expenses cited by Tracy "stem from Anthem's denial of coverage for treatment [K.T.] received . . . for an eating disorder." Appellant's Appendix at 24; see id. at 52-53 (containing a register of uninsured medical expenses for K.T. from January 1, 2012 through September 18, 2012). In addition, in her July 3, 2012 e-mail message, Tracy had calculated that Phillip owed her $26,642.72. Phillip noted in his response to the contempt petition that Tracy included "numerous false entries" in her calculation and included certain expenses not addressed in the Final Decree. Id. at 24. In its order finding Phillip

15

in contempt, the court found that Phillip owed Tracy $19,995.35 as his share of uninsured healthcare expenses for January 1, 2012 through September 18, 2012, and $1,731.75 as his share of the family's travel expenses for K.T.'s treatment, for an aggregate amount significantly less than the amount requested by Tracy, suggesting there was some merit to Phillip's arguments regarding Tracy's calculations. The pending claim against Anthem related to a majority of the incurred medical expenses and the discrepancy between Tracy's calculation and the court's determination regarding the amount owed by Phillip provide further support for the conclusion that Phillip was not willfully disobedient.

For the foregoing reasons, I conclude that Phillip did not act with willful disobedience and thus that the trial court abused its discretion in finding him in contempt, and I would reverse the court's orders finding Phillip in contempt and awarding attorney fees to Tracy as a result of the contempt finding.