**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 15 2015, 8:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**KATHERINE A. HARMON**
**JARED S. SUNDAY**
Mallor Grodner, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KAREN E. FIELDER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1405-DR-216 |
| | ) | |
| BRANDON E. FIELDER, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia J. Ayers, Judge
Cause No. 49D04-1104-DR-12772

**January 15, 2015**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Karen Fielder appeals the trial court's distribution of marital property. We affirm and remand.

## Issues

Karen raises two issues, which we consolidate and restate as:

> I.  whether the trial court properly valued certain retirement accounts; and
>
> II. whether the trial court's final order allows for the review of its distribution of the marital estate.

## Facts

Karen and Brandon Fielder married in 1998 and had three children. In April 2011, Karen petitioned for dissolution of the marriage, and Brandon cross-petitioned. On April 1, 2011, Brandon had one retirement account valued at $98,927.83 and another retirement account valued at $82,942.75. Brandon was involved in day trading using his retirement accounts. On April 30, 2011, the accounts had decreased in value to $28,077.30 and $36,123.94.

On March 10, 2014, the trial court conducted a final hearing on the dissolution petitions. By this time, the retirement accounts had no value. The trial court issued an order dissolving the marriage on March 11, 2014. On April 21, 2014, the trial court issued an order addressing outstanding issues, including the distribution of marital property. On that issue, the trial court found in part:

> 12.  Husband participated in "day trading" during the marriage as well as after the date of separation.

2

13. Although Husband was at times successful in the "day trading" and increased the net value of his Schwab investment account in the months leading up to the parties' separation, he was unsuccessful in his trading efforts near the date of filing.

14. Husband stopped "day trading" as he was ordered by the court at the preliminary hearing.

15. While Husband's efforts were unsuccessful, the Court finds that he was attempting to continue to increase the value of the estate. Husband made no withdrawals from these accounts and he did not intend to diminish the value of the marital assets.

16. Wife removed personal property from the marital residence when she relocated after the preliminary hearing. She took furniture, appliances, children's toys and furniture. She even removed the light bulbs from the marital residence. An inventory of the items taken by Wife is attached hereto and marked as Exhibit "A". The value of the property removed by Wife is $35,500.00.

17. Wife did not contribute on a regular and/or consistent basis to the support of the minor children during the pendency of this action. Husband utilized other marital assets in order to maintain payments for the marital residence for him and the children.

18. Husband's actions were not designed to hide, deplete or divert marital assets.

19. Wife filed two (2) verified financial declaration forms during the course of the pendency of this action, and Husband filed one (1) verified financial declaration form.

20. Both parties testified at Final Hearing to asset values that were different from their financial declarations.

21. During the lengthy pendency of this action, Husband assumed responsibility for the vast majority of the marital debt which was substantial (approximately $143,000.00). Wife assumed debts of approximately $4,300.00.

3

22.    In light of these facts, the Court makes the following Orders:

a.    Husband retain sole ownership and possession of the marital residence . . . .

b.    Husband shall refinance the mortgage into his name alone within 180 days and shall make efforts to do so immediately.

c.    Wife shall request from Husband's counsel [sic] execute a quit claim deed and sales disclosure form, and provide same to Husband's counsel for recording.

d.    A portion of the proceeds from the sale of the . . . Black Locust real property have been divided. Prior to the sale, Husband withdrew $30,000.00 in equity from this property. Husband used at least a portion of this money to pay joint marital debts and maintain a home for the parties' three children. Husband was ordered to hold the sale proceeds in escrow, which he did not do. Wife received only $13,000.00 of the sale proceeds of $37,000. Husband, therefore, owes Wife the sum of $20,500.00, ($15,000.00 from Husband's equity withdrawal and $5,500.00 from additional sales proceeds) which must be paid to her within 12 months of this Order.

e.    Husband shall retain ownership and possession of the 1995 Camaro, the 1993 Honda Nighthawk, and any other vehicles in his possession. . . .

f.    Wife shall retain ownership of the 1992 Bravo Invader boat and trailer, the 2003 Kia Sedona, and the 2000 Grand Am, and any other vehicles in her possession. . . .

g.    Each party shall retain all accounts in his or her own name, including checking, savings, retirement, and investments.

h.    Each party shall retain all personal property in his or her possession.

4

> i. Husband shall be responsible for the following debts:
>
>> i. Lowe's;
>>
>> ii. Home Depot;
>>
>> iii. The joint Chase credit card . . .;
>>
>> iv. the Key Bank credit card;
>>
>> v. The first and second mortgages on the marital residence;
>>
>> vi. All other debt in his name and all debt he incurred after the date of separation. . . .
>
> j. Wife shall be responsible for all debts in her name, and all debts incurred after the date of separation. . . .

App. pp. 24-27. Karen now appeals.[1]

## Analysis

The trial court entered sua sponte findings. In such a situation, the specific factual findings control only the issues that they cover, and a general judgment standard applies to issues upon which there are no findings. Stone v. Stone, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013), aff'd on reh'g. "It is not necessary that each and every finding be correct, and even if one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or is otherwise supported by the record." Id. We may affirm a general judgment with sua sponte findings on any legal theory supported by the

---

[1] The trial court awarded Brandon sole legal and physical custody of the children, continued orders of protection against Karen relating to Brandon and the children, and ordered that Karen have no parenting time or other contact with the children until she receives adequate psychotherapy and participates in reunification therapy with the children. Karen does not appeal any child-related matters.

evidence. Id. In reviewing the accuracy of findings, we first consider whether the evidence supports them. Id. We then consider whether the findings support the judgment. Id. "We will disregard a finding only if it is clearly erroneous, which means the record contains no facts to support it either directly or by inference." Id.

A judgment also is clearly erroneous if it relies on an incorrect legal standard, and we will not defer to a trial court's legal conclusions. Id. at 998-99. We give due regard to the trial court's ability to assess the credibility of witnesses and will not reweigh the evidence, and we must consider only the evidence most favorable to the judgment along with all reasonable inferences drawn in favor of the judgment. Id. at 999. Additionally, we "'give considerable deference to the findings of the trial court in family law matters . . . .'" Id. (quoting MacLafferty v. MacLafferty, 829 N.E.2d 938, 940 (Ind. 2005)). This deference is a reflection that the trial court is in the best position to judge the facts, ascertain family dynamics, and judge witness credibility and the like. Id. "'But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result.'" Id. (quoting MacLafferty, 829 N.E.2d at 941).

Finally, Brandon has not filed an appellee's brief. In such a case, we need not bear the burden of developing an argument on his behalf. See Morgal-Henrich v. Henrich, 970 N.E.2d 207, 210 (Ind. Ct. App. 2012). We will reverse if Karen establishes prima facie error, which means error "'at first sight, on first appearance, or on the face of it.'" Id. (quoting Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1068 (Ind. 2006)). If Karen does not meet this burden, we will affirm. See id.

### I. Retirement Accounts

Karen first argues that the trial court abused its discretion in valuing the retirement accounts on the date of the final hearing, when they had no value, as opposed to the date she filed for dissolution, when they had a value of more than $180,000.00. It is clear "that the trial court has discretion when valuing the marital assets to set any date between the date of filing the dissolution petition and the date of the hearing." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). "The selection of the valuation date for any particular marital asset has the effect of allocating the risk of change in the value of that asset between the date of valuation and date of the hearing. We entrust this allocation to the discretion of the trial court." Quillen, 671 N.E.2d at 102-03.

Karen argues that, because she had no control of the accounts and the reduced value was caused by Brandon's actions, the trial court abused its discretion by not valuing them at the date of filing. In support of her argument, Karen relies on Reese v. Reese, 671 N.E.2d 187, 192 (Ind. Ct. App. 1996) and Trabucco v. Trabucco, 944 N.E.2d 544, 560 (Ind. Ct. App. 2011), in which we held that it was not an abuse of discretion to allocate the risk to the party who had control of the respective assets. However, nothing in either case requires a trial court to allocate the risk of loss to the party in control of the property or to use the date of filing to value marital property.

Here, the trial court found that, although Brandon had increased the net value of the investment accounts in the months leading up to the separation, he was unsuccessful in his trading efforts near the date of filing. The trial court also found that Brandon was attempting to increase the value of the marital estate. Based on these findings, we cannot

7

say that the trial court's decision to allocate the risk of loss to both parties was an abuse of discretion.

Karen also claims the trial court abused its discretion when it concluded that Brandon's actions did not constitute dissipation of marital assets. Generally, we review findings of dissipation under an abuse of discretion standard. Troyer v. Troyer, 987 N.E.2d 1130, 1140 (Ind. Ct. App. 2013), trans. denied. "We will reverse only if the trial court's judgment is clearly against the logic and effect of the facts and the reasonable inferences to be drawn from those facts." Id. Waste and misuse are the hallmarks of dissipation, and our legislature intended that the term carry its common meaning denoting "foolish" or "aimless" spending. Id. (quotation omitted). Dissipation involves the frivolous, unjustified spending of marital assets, which includes the concealment and misuse of marital property. Id.

> Factors to consider in determining whether dissipation has occurred include: (1) whether the expenditure benefited the marriage or was made for a purpose entirely unrelated to the marriage; (2) the timing of the transaction; (3) whether the expenditure was excessive or de minimis; and (4) whether the dissipating party intended to hide, deplete, or divert the marital asset.

Id.

On this issue, the trial court found:

> 12. Husband participated in "day trading" during the marriage as well as after the date of separation.
>
> 13. Although Husband was at times successful in the "day trading" and increased the net value of his Schwab investment account in the months leading up to the parties' separation, he was unsuccessful in his trading efforts near the date of filing.

14. Husband stopped "day trading" as he was ordered by the court at the preliminary hearing.

15. While Husband's efforts were unsuccessful, the Court finds that he was attempting to continue to increase the value of the estate. Husband made no withdrawals from these accounts and he did not intend to diminish the value of the marital assets.

\* \* \* \* \*

18. Husband's actions were not designed to hide, deplete or divert marital assets.

App. pp. 24-25. It is clear that the trial court was not persuaded by Karen's attempt to characterize Brandon's day trading as dissipation. Karen's argument on appeal is nothing more than a request to reweigh the evidence, which we cannot do. In light of the trial court's findings and the evidence supporting the findings, we cannot conclude that the trial court's judgment was clearly against the logic and effect of the facts.

## II. Adequacy of Order

Karen argues that, due to the lack of assigned values of all of the marital property, she cannot determine whether the marital estate was equally divided as required by Indiana Code Section 31-15-7-5, which requires a trial court to "presume that an equal division of the marital property between the parties is just and reasonable." Given our prima facie standard of review, we agree that, because the order does not include the value of the parties' various assets and liabilities, we are unable to fully review the distribution of the marital estate. Accordingly, we remand for a more specific order showing how the marital estate was valued. In the event that a deviation from the

9

presumptive 50/50 split is warranted, the trial court should include specific findings to support such.  See Smith v. Smith, 938 N.E.2d 857, 860 (Ind. Ct. App. 2010) ("[A] trial court may deviate from equal division so long as it sets forth a rational basis for its decision.").

## Conclusion

The trial court did not abuse its discretion by valuing the retirement accounts as of the date of the final hearing or by finding that Brandon did not dissipate marital assets. However, because of the manner in which the trial court's order is drafted, we cannot review the division of the marital estate.  We affirm and remand.

Affirmed and remanded.

MAY, J., and PYLE, J., concur.